```
                IN THE UNITED STATES DISTRICT COURT
              FOR THE EASTERN DISTRICT OF VIRGINIA

                        Alexandria Division

HOME FUNDING GROUP, LLC,      )
                              )
     Plaintiff,               )
                              )
          v.                  )    1:06cv1400 (JCC)
                              )
ERICKA MYERS AND,             )
1ST PREFERENCE MORTGAGE,      )
                              )
     Defendants.              )
```

### **M E M O R A N D U M   O P I N I O N**

This matter is before the Court on Plaintiff's motion for a Temporary Restraining Order. For the following reasons, the Court will grant Plaintiff's motion.

### I. Background

Plaintiff Home Funding Group ("HFG") is a Limited Liability Company that brokers various types of residential mortgage loans. Since its inception, HFG has spent considerable resources developing techniques, financial expertise, business methods, management, customer accounts, personnel, and goodwill, all of which are considered highly confidential by HFG. Additionally, HFG consistently maintains a confidential and proprietary list of its current and prospective clients, including their contact information and personal financial data.

When training new employees, HFG teaches new employees about its unique marketing and business methods for obtaining and

-1-

serving clients.  In May 2006, Defendant Ericka Myers ("Myers") participated in this training upon the commencement of her employment with HFG as a loan officer.  As a loan officer, Myers was responsible for originating and processing loans, serving current and prospective clients, and assisting in all aspects of the lending process until closing.

When Myers began working with HFG, she executed the HFG Loan Officer Employment Agreement ("Employment Agreement"), a non-competition and non-solicitation agreement.  The agreement prohibited, generally: (1) solicitation of current or prospective clients or employees for a period of 18 months after termination of employment; (2) working for an entity or individual, including herself, on a loan that she originated in the six months preceding the termination of her employment with HFG; (3) disclosure of confidential information, proprietary information, or trade secrets; or (4) any other act of disloyalty to HFG.

After becoming intimately involved with HFG's business and being entrusted with confidential and proprietary information, Myers abruptly abandoned her employment by failing to appear for several days for which she was scheduled, which resulted in her termination.  Plaintiff alleges that, prior and subsequent to this abandonment, Myers breached her employment agreement by (1) simultaneously working with competitor, Defendant 1st Preference Mortgage Corporation ("FPM"), during her

employment with HFG; (2) diverting clients away from HFG during her employment with HFG; (3) soliciting existing and potential HFG clients for the benefit of FPM; and (4) working for competitor FPM within 18 months of termination fo employment at HFG.  Plaintiff further alleges that Myers' actions were undertaken with knowledge and encouragement of FPM.

Upon being contacted by Plaintiffs, Defendants have failed to cease such actions and these violations continue.  It is upon these allegations that Plaintiff HFG seeks a temporary restraining order.

## II. Standard of Review

The issuance or denial of a preliminary injunction or temporary restraining order (TRO) "is committed to the sound discretion of the trial court."  *Quince Orchard Valley Citizens Ass'n, Inc v. Hodel*, 872 F.2d 75, 78 (4th Cir. 1989).  In determining whether an injunction is appropriate, a district court must apply the "balance-of-hardship" test.  *See Blackwelder Furniture Co. v. Seilig Mfg. Co., Inc.*, 550 F.2d 189, 194 (4th Cir. 1977); *Railway Labor Executives' Ass'n v. Wheeling Acquisition Corp.*, 736 F. Supp. 1397, 1401-02 (E.D. Va. 1990) (Ellis, J.) (applying *Blackwelder* test to determine issuance of temporary restraining order).

Under the test, a court should examine the following four factors: (1) the likelihood of irreparable harm to the

plaintiff without the injunction; (2) the likelihood of harm to the defendant with an injunction; (3) the plaintiff's likelihood of success on the merits; and (4) the public interest. *See Hughes Network Systems, Inc. v. InterDigital Comm'n Corp.*, 17 F.3d 691, 693 (4th Cir. 1994); *Blackwelder Furniture*, 550 F.2d at 193-96. No single factor can defeat a motion for a preliminary injunction or TRO. Rather, "[t]he decision to grant or deny a preliminary injunction depends upon a 'flexible interplay' among all the factors considered." *Blackwelder Furniture*, 550 F.2d at 196.

### III. Analysis

In carefully balancing the factors of the *Blackwelder* test, for the reasons stated below, the Court will grant Plaintiff's Motion for a Temporary Restraining Order.

### A. Likelihood of irreparable harm to the plaintiff without the injunction;

As to irreparable harm to the Plaintiff, this factor weighs heavily in Plaintiff's favor. Without injunctive relief, Defendants will continue to engage in behavior in violation of the non-competition clause, divulging trade secrets and confidential information. The disclosure of trade secrets establishes immediate irreparable harm because "a trade secret, once lost is, of course, lost forever." *Acierno v. New Castle Co.*, 40 F.3d 645, 647 (3d Cir. 1994). The same conclusion


logically applies to the disclosure of confidential information as well. Therefore, since any further disclosure of HFG's trade secrets or confidential information would result in irreparable harm to Plaintiff, this Court finds this factor of the *Blackwelder* test weighs heavily in favor of HFG.

    **B.  Likelihood of harm to the Defendants with an injunction;**

This Court does not perceive any likelihood of harm to the Defendants. If relief is granted, Defendant FPM will continue their services as it had before Defendant Myers joined the organization, and will only stand to lose benefits unjustly gained. Defendant Myers will cease to be employed by FPM, as she contracted within her non-compete agreement, and may seek employment with any firm or organization outside the scope of this agreement. Essentially, injunctive relief only will prohibit Defendants from engaging in any continued illegal or unethical activity. Therefore, this Court does not find any likelihood of harm to the Defendants if relief is granted.

    **C.  Plaintiff's likelihood of success on the merits;**

Without a response from Defendants, the Court cannot definitively assess Plaintiff's likelihood of success on the merits. Accordingly, this factor does not weigh heavily in favor of either party.

Nevertheless, Plaintiff alleges a cognizable claim for breach of the non-compete agreement, the validity of which is

governed by the factors enumerated in *Paramount Termite Control v. Rector,* 238 Va. 171, 174 (1989).  In that case, the Virginia Supreme Court held that the reasonableness of an employment agreement's restrictive covenant is based upon four factors: (1) the length of the time the restriction operates; (2) the geographic area covered; (3) the fairness of the protection accorded to the employer; and (4) the extend of interference with the public's interests. *Id.* at 174-76.

In consideration of these factors, the Court finds that the agreement is sufficiently valid to warrant injunctive relief. Furthermore, sufficient evidence exists that leads this Court to believe that Myers is working for FPM, a competitor, disclosing business methods and trade secrets, and soliciting current and prospective clients of HFG.  These actions are prohibited by the non-compete agreement and may be in violation of Virginia law. Thus, in consideration of Plaintiff's likelihood of success, this factor weighs in favor of the Plaintiff until this Court can re-assess the initial merit of the claims upon a response by the Defendants at a subsequent hearing for preliminary injunction.

### D.  **The public interest**

Injunctive relief does not prohibit Defendant FPM from continuing their operations as appropriate, nor does it prohibit Defendant Myers from seeking any other type of employment. Therefore, the public interest is clearly not harmed by

injunctive relief.  The Court reserves judgment for another day as to whether a violation of the non-compete agreement occurred.  Nonetheless, the public interest is served by allowing firms to protect trade secrets and confidential information, and by providing a forum to seek temporary injunctive relief to enjoin any further breach or disclosure, potentially causing irreparable harm and destroying incentives to innovate.  For these reasons, the public interest is not violated by injunctive relief, but instead is served.

### IV. Conclusion

For the reasons stated above, the Court will grant Plaintiff's motion for a Temporary Restraining Order.

An appropriate Order will issue.

```
December 14, 2006                _____/s/_____
Alexandria, Virginia                         James C. Cacheris
                                 UNITED STATES DISTRICT COURT JUDGE
```